**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

HAROLD HOLCOMB,

                Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,

              Defendant.

) Case No. EDCV 17-1341-JPR
)
)
) **MEMORANDUM DECISION AND ORDER**
) **AFFIRMING COMMISSIONER**
)
)
)
)
)
)
)

**I.  PROCEEDINGS**

    Plaintiff seeks review of the Commissioner's final decision denying his application for supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of the undersigned under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed April 30, 2018, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is affirmed.

## II.  BACKGROUND

Plaintiff was born in 1962.  (Administrative Record ("AR") 38.)  He completed high school (AR 39) and has no relevant work experience (see AR 23, 40).

In August or September 2013,[1] Plaintiff filed an application for SSI, alleging that he had been disabled since August 8, 2013, because of a stroke, difficulty speaking, diabetes, high blood pressure, right-side paralysis, depression, and morbid obesity. (AR 57, 61, 148.)  After his application was denied initially and on reconsideration, he requested a hearing before an Administrative Law Judge.  (AR 86, 95, 102-03.)  A hearing was held on March 30, 2016, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert.  (AR 34-56, 145.)  In a written decision issued May 6, 2016, the ALJ found Plaintiff not disabled.  (AR 17-33.)  Plaintiff requested Appeals Council review (AR 147), which was denied on May 3, 2017 (AR 1-5).  This action followed.

## III.  STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).  Substantial

---

[1] Both the ALJ (AR 17) and the state-agency reviewers (AR 57) noted an application date of August 15, 2013.  But the parties list the application date as September 6, 2013.  (J. Stip. at 2; see also AR 148 (SSI application dated Sept. 6, 2013).)  Under either date, the ALJ's decision is affirmed.

evidence means such evidence as a reasonable person might accept as adequate to support a conclusion.  <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)).  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's.  <u>Id.</u> at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled.  20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996).  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is

not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and his claim must be denied. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[2] to perform his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant

---

[2] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B. <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date. (AR 19.) At step two, he concluded that Plaintiff had the following severe impairments: "status post ischemic stroke; degenerative disc disease of lumbar spine; mild left hip degenerative joint disease; and obesity." (<u>Id.</u>) At step three, he determined that Plaintiff's impairments did not meet or equal a Listing. (AR 22.)

At step four, the ALJ found that Plaintiff had the RFC to perform a limited range of light work:

> [He] is able to lift and carry 20 pounds occasionally and
> 10 pounds frequently; stand and walk for six hours each
> in an eight-hour workday; and sit for six hours in an
> eight-hour workday. [He] is limited to occasional
> climbing but never climbing ladders, ropes or scaffolds,
> and frequent balancing. [He] can perform unskilled work.

(<u>Id.</u>) The ALJ found that he had no past relevant work. (AR 27.)

At step five, the ALJ concluded that given Plaintiff's age, education, work experience, and RFC, he could perform three representative jobs in the national economy. (AR 28.) Thus, the

5

ALJ found Plaintiff not disabled.  (AR 28-29.)

## V.  DISCUSSION[3]

Plaintiff argues that the ALJ erroneously rejected his subjective symptom statements.  (J. Stip. at 4-11.)  But as discussed below, the ALJ did not err and remand is not warranted. Because the ALJ's RFC and step-five analyses may have been based in part on his adverse credibility assessment, the Court construes Plaintiff's briefing liberally to include indirect challenges to them.

### A.  Applicable Law

An ALJ's assessment of a claimant's allegations concerning the severity of his symptoms is entitled to "great weight."  See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (as amended); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1985) (as amended Feb. 24, 1986).  "[T]he ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'"  Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989)).

In evaluating a claimant's subjective symptom testimony, the

---

[3] In Lucia v. SEC, 585 U.S. __, 2018 WL 3057893, at *8 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings.  (See AR 36-56, 147; J. Stip. at 4-11, 16-17); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (plaintiff forfeits issues not raised before ALJ or Appeals Council).

6

ALJ engages in a two-step analysis.  See Lingenfelter, 504 F.3d at 1035-36; see also SSR 16-3p, 2016 WL 1119029, at *3 (Mar. 16, 2016).  "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged."  Lingenfelter, 504 F.3d at 1036.  If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged."  Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original).

If the claimant meets the first test, the ALJ may discredit the claimant's subjective symptom testimony only if he makes specific findings that support the conclusion.  See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010).  Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.  Brown-Hunter v. Colvin, 806 F.3d 487, 493 (9th Cir. 2015) (as amended); Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014).  The ALJ may consider, among other factors, (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; (4) the claimant's work record; and (5) testimony from physicians and third parties.  Rounds v. Comm'r Soc. Sec. Admin., 807 F.3d 996, 1006 (9th Cir. 2015) (as

7

amended); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002). If the ALJ's assessment of the claimant's subjective symptom statements is supported by substantial evidence in the record, the reviewing court "may not engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

B. <u>Relevant Background</u>

1. *Medical Records*

On March 13, 2013, Plaintiff was admitted to a hospital emergency room after being hit by a car. (AR 239-40.) He complained of hip and back pain (AR 239-40, 243-44) and received x-rays of his lumbosacral spine (AR 243) and left hip (AR 244). The spine x-ray demonstrated "mild dextroscoliosis," "[m]ultilevel degenerative disc disease," "lumbar spondylosis," and "[m]arginal spurring." (AR 243.) It also showed "no compression fractures or subluxation," and the "sacroiliac joints" and "transverse processes and pedicles" were all "intact." (<u>Id.</u>) The hip x-ray showed "[m]ild degenerative joint disease" and was otherwise unremarkable. (AR 244.)

On August 8, 2013, the alleged onset date, Plaintiff went to an emergency room after noticing "facial droop" on the right side of his face and slurred speech. (AR 306.) An MRI of his brain revealed two "small" foci of acute ischemia and evidence of "small vessel disease." (AR 246.) On examination, his gait was ataxic, he had slurred speech, and he was "unable to write using [a] pen." (AR 307.) But his arm strength was "5/5," and his extremities were functioning normally. (<u>Id.</u>) He was diagnosed as having suffered an ischemic stroke and admitted to the hospital. (<u>Id.</u>)

As an inpatient, Plaintiff was seen by a physical therapist, speech therapist, and occupational therapist. (AR 271.) On August 9, 2013, the physical therapist noted that he was independent in almost all areas of functional activity, including standing up and "ambulation," and used no assistive device for ambulation or standing. (AR 279.) The therapist recommended an occupational-therapy assessment and speech-therapy services but no further physical therapy. (Id.) The speech therapist that same day noted some right-side weakness and speech and swallowing issues. (AR 276.) On August 11, 2013, the occupational therapist found that his right arm was performing "[within functional limits]" but at "3+/5" strength and that his grip strength was "3/5." (AR 274.) The hospital discharged him on August 13, 2013. (AR 270.)

An outpatient note from August 20, 2013, stated that he was referred to "PT/speech therapy." (AR 298.) An exam that day indicated that his right-hand strength was "4-/5" and his upper-right-arm strength was "4/5." (AR 293.) He returned for occupational therapy on September 12, 2013, during which his right hand, shoulder, and arm strength were "4/5" each. (AR 266-67.) Speech-therapy notes from the same day showed mild to moderate issues with speech intelligibility and conversation and mild oral motor-functioning issues. (AR 268.) No further documentation of occupational, speech, or physical therapy exists in the record.

By September 26, 2013, his right hand and leg had "5/5" strength and his right arm had "5-/5" strength, which the attending doctor noted had "improved from [the] last visit." (AR

299.)[4]  On November 14, 2013, he was operating within normal limits and had full "5/5" strength in his upper extremities and right hand.  (AR 294, 297.)

Plaintiff was seen again on February 14, 2014.  (AR 292.) He had "residual slurred speech."  (AR 295.)  No issues with his right arm, hand, or leg were noted, and his "[m]usculoskeletal" functioning was within normal limits.  (AR 292, 295.) Thereafter, Plaintiff visited an emergency room in April 2014 for a dog bite on his right hand (AR 305) and again in July 2014 for diabetes complications (AR 319).  No other visits with medical professionals are contained in the record.

2.  *Consulting and Reviewing Doctors*

On January 31, 2014, consulting neurologist Sarah L. Maze met with Plaintiff and reviewed his medical records, which included a recent MRI of his brain and x-ray of his lumbar spine. (AR 281.)  Plaintiff reported that he had "weakness in [his] right arm and right leg," "move[d] very slowly," and had "had low back pain for many years."  (Id.)  On examination he was noted as having "br[ought] a single-point cane," and "he st[ood] slowly" and "walk[ed] with a slightly widened base."  (AR 283.)  Dr. Maze noted that Plaintiff was "somewhat unsteady when standing" and had "slight residual weakness in the right hand."  (Id.)  Her motor examination found that his right arm and hand were operating at "5-/5" strength and that his grip strength was

---

[4]  A shower chair was apparently recommended by the doctor that day, seemingly as treatment for stroke-related symptoms. (AR 296.)  The outpatient occupational-therapy evaluation from two weeks earlier, however, indicated that he was already using a shower chair at the time.  (AR 267.)

"60/60 on the right and 20/20 on the left."  (AR 282-83.)

Dr. Maze concluded that Plaintiff could "occasionally lift 20 pounds and frequently lift 10 pounds," "stand and walk independently for six hours of an 8-hour workday," "sit six hours of an 8-hour workday," and "perform fine detailed movements with the right arm without restriction."  (AR 283.)  In March and July 2014, respectively, internist Nancy Armstrong (AR 69) and otolaryngologist K. Wahl (AR 83) found the same after reviewing Plaintiff's medical records.  (See AR 65-66, 79-80.)

### 3.  *Plaintiff's Statements*

Plaintiff represented in his SSI application that he "[did] not need help in personal care, hygiene or upkeep of a home" (AR 149), but a function report completed by his mother in December 2013 suggested that he was unable to dress himself, put on shoes or socks, shave, bathe, eat, or use the toilet on his own (AR 181-88).[5]  She attributed these issues to his "arm."  (AR 182.)  She also claimed that he used a wheelchair "sometimes," a walker, and a shower chair.  (AR 187-88.)  In a May 2014 exertion questionnaire, he similarly claimed that he was unable to "do to[o] much," including "tie [his] shoe," because of the lack of function in his "right side."  (AR 212.)  He stated that he could not walk far, "[e]specially in the heat," and had a "bad" back. (Id.)  He explicitly wrote, "[I] don't lift anything bec[a]use I

---

[5] The ALJ treated this function report as a third-party report representing the mother's own statements.  (AR 27.)  The report is at times written in the first person from Plaintiff's perspective, however.  (See AR 181.)  To the extent the report represents Plaintiff's own statements, it is considered as part of his subjective symptom allegations.

11

was hit by [a] car[.]"  (AR 213.)

At his March 30, 2016 hearing, Plaintiff reiterated that he had difficulty dressing and getting in the shower, though he did not mention needing assistance with either.  (AR 44.)  He remarked that he could not be in the sun long without getting "woozy."  (AR 43.)  He confirmed that he used a cane but stated, "I try not to."  (AR 44.)  He also "[couldn't] move around that much because of the stroke."  (Id.)  He reported walking "a block and back" for exercise.  (AR 45.)  When asked if he could walk "throughout an eight-hour period," he replied that he could not because he would "feel woozy" and that "sometimes if it's hot [he was] not going to be out there trying to commit another stroke."  (AR 47.)  When asked if he could lift things, he said he wouldn't want to because he didn't want to fall or have "another stroke."  (AR 50.)  He said that he could lift two gallons of milk but could not carry even one gallon throughout an eight-hour day because of difficulty walking, specifically, in keeping his balance.  (Id.)  He claimed he had difficulty standing up and that he could stand "maybe for a good hour" before wanting "to sit down again."  (AR 51.)  He also claimed that his "right hand" was "partially paralyzed . . . from the stroke."  (AR 52.)

Regarding treatment, he mentioned that he had seen a speech therapist but had stopped because he "[didn't] have transportation" and "it was too far."  (AR 42, 54.)  He did not have a car, so he either got rides from family or friends or "[would] take the bus when [he had] money."  (AR 42, 46.)  He could use the bus on his own, he testified.  (AR 46.)  Plaintiff reported that he still got "checked up all the time."  (Id.)  He

12

was walking to a healthcare center "a block-and-a-half down,"
presumably from where he lived, which he visited "two or three
times out of the month." (Id.) He discussed seeing a "Dr.
Emblue" regarding his legs. (AR 51.) He stated that he was
seeing a "foot doctor" for "new shoes" and that he planned to see
an "eye doctor" next. (AR 44.)[6]

 C. <u>Analysis</u>

  The ALJ partially discounted Plaintiff's testimony because
it was "not entirely consistent with the medical evidence and
other evidence in the record." (AR 24.) Plaintiff argues that
in making this finding, the ALJ erred for two reasons. (J. Stip.
at 4-11.) Neither warrants remand, however.

  First, Plaintiff argues that the ALJ's use of "boilerplate
language" was "woefully insufficient" to reject his subjective
symptom testimony. (Id. at 6-7.) He takes issue with the ALJ's
conclusion that

> [a]fter careful consideration of the evidence, the
> undersigned finds that [Plaintiff's] medically
> determinable impairments could reasonably be expected to
> cause some of the alleged symptoms; however,
> [Plaintiff's] statements concerning the intensity,
> persistence, and limiting effects of these symptoms are
> not entirely consistent with the medical evidence and
> other evidence in the record for the reasons explained
> throughout this decision.

---

 [6] There are no records of checkups at any local health
center, nor are there records of visits with any "Dr. Emblue" or
a "foot doctor."

(Id. at 6 (citing AR 24).)  Although the ALJ certainly used some
prefatory boilerplate language, as is common, he did not err
because he explained throughout his decision acceptable reasons
for discrediting Plaintiff's testimony.  See Treichler, 775 F.3d
at 1103 ("After making this boilerplate statement, the ALJs
typically identify what parts of the claimant's testimony were
not credible and why."); Tipton v. Colvin, No. 1:13-cv-00359-REB,
2014 WL 4773964, at *6 & n.5 (D. Idaho Sept. 24, 2014) ("Though
the use of such common boilerplate language runs the risk of
'getting things backwards,' its mere use is not cause for remand
if the ALJ's conclusion is followed by sufficient reasoning."
(citation omitted)).

        Second, Plaintiff contends that the ALJ erred by rejecting
his testimony for only its inconsistency with the objective
medical evidence.  (J. Stip. at 7-8.)  But the ALJ in fact
provided another reason for discrediting his statements:
Plaintiff failed to seek "follow-up treatment."  (See AR 24-26.)
Because both reasons were clear and convincing, remand is
unwarranted.

                1.   *Medical Records Contradicted Plaintiff's Testimony*
        Contradiction with evidence in the medical record is a
"sufficient basis" for rejecting a claimant's subjective symptom
testimony.  Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155,
1161 (9th Cir. 2008); see Morgan v. Comm'r of Soc. Sec. Admin.,
169 F.3d 595, 600 (9th Cir. 1999) (upholding "conflict between
[plaintiff's] testimony of subjective complaints and the
objective medical evidence in the record" as "specific and
substantial" reason undermining credibility).  Although a lack of

medical evidence "cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."[7] <u>Burch v. Barnhart</u>, 400 F.3d 676, 681 (9th Cir. 2005); <u>Rollins v. Massanari</u>, 261 F.3d 853, 857 (9th Cir. 2001). Here, the ALJ properly discounted Plaintiff's testimony by considering its inconsistency with the medical record.

First, Plaintiff claimed stroke-related weakness on his right side. (<u>See, e.g.</u>, AR 52 (testifying that his right hand was "partially paralyzed . . . from the stroke"), 182 (claiming inability to do many things because of right-arm issues), 212 (stating that he was unable to "do to[o] much" because of his paralysis).) This weakness was allegedly so severe that he needed help to dress himself (AR 43-44, 181-82), put on shoes (AR 181, 212), shave (AR 181-83, 185), bathe (AR 44, 182, 185), eat (AR 181-82), and use the toilet on his own (AR 182-83, 188).

Yet within two months of his stroke, Plaintiff's medical records showed that his right hand, arm, and leg had "improved" to "5/5" strength and were functioning within normal limits. (<u>See, e.g.</u>, AR 274 (Aug. 11, 2013: right-hand strength "3+/5"), 293 (Aug. 20, 2013: hand strength at "4-/5" and upper-right-arm strength at "4/5"), 299 (Sept. 2013: strength at "5/5"), 297 (Nov. 2013: strength at "5/5"), 282-83 (Jan. 2014: Dr. Maze finding only "slight residual weakness" and right-side strength was "5-/5"), 295 (Feb. 2014: "Musculoskeletal" within normal

---

[7] Plaintiff thus incorrectly states that inconsistency with objective medical evidence is "always" a "legally insufficient" basis for discrediting a claimant's testimony. (J. Stip. at 7-8.)

15

limits).) There was no mention of problems with his right hand
or side when he was seen on February 14, 2014, even though his
visit that day specifically addressed other continuing side
effects from the stroke. (AR 295.) Further, medical records
after February 2014 make no mention of any stroke-related
symptoms whatsoever. (See AR 305 (Apr. 2014: emergency-room
visit for dog bite to right hand), 319 (July 2014: emergency-room
visit for diabetes complications)); see also Womeldorf v.
Berryhill, 685 F. App'x 620, 621 (9th Cir. 2017) ("[ALJ] properly
discounted [plaintiff's] severity claims by pointing to . . . the
nature of the medical evidence itself[.]").

Second, Plaintiff's claimed walking, standing, and lifting
limitations, which he attributed to his hip and back (see AR 50,
212-13), were also unsupported by the record. The ALJ properly
noted that the only medical records regarding his hip or back
were from his March 2013 emergency-room visit (before the
relevant period) and the January 2014 opinion of Dr. Maze. (AR
25-26, 239-40, 243-44, 281-84.) Although his March 2013 lumbar-
spine x-ray showed "[m]ultilevel degenerative disc disease" (AR
243) and his hip x-ray that same day showed "[m]ild degenerative
joint disease" (AR 244), Dr. Maze reviewed those images, examined
Plaintiff, and found that he could "stand and walk independently
for six hours of an 8-hour workday" and "occasionally lift 20
pounds and frequently lift 10 pounds" (AR 283). No doctor opined
otherwise. Dr. Maze's findings contradicted Plaintiff's claims
that he could stand for only an hour (AR 51), walk two blocks a
day (AR 45), and not lift "anything" (AR 213). See Leak v.
Berryhill, No. 5:16-CV-01501-SK, 2017 WL 7833633, at *2 (C.D.

16

Cal. Aug. 14, 2017) (ALJ properly rejected plaintiff's subjective testimony in part because it was inconsistent with x-rays showing only "mild" ailments and findings of consultative examiner who assessed "no functional limitations").

Plaintiff apparently sometimes used a cane. (AR 44.) But none of the medical evidence suggested that it was prescribed, and Plaintiff explained that "he [tried] not to" use it, suggesting that it was elective rather than necessary. (Id.) Moreover, just after his stroke, on August 8, 2013, a physical therapist noted that Plaintiff was independent in standing and walking and did not need an assistive device. (AR 279.) Plaintiff brought a cane to his evaluation with Dr. Maze, but she observed that "he [was] able to stand and walk alone." (AR 283); see also Verduzco v. Apfel, 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ properly discounted credibility when claimant "walked slowly and used a cane at the hearing" even though no doctor indicated he used or needed assistive device and two doctors noted he did not need one); Castaneda v. Astrue, 344 F. App'x 396, 398 (9th Cir. 2009) (upholding adverse credibility determination when claimant asserted difficulty walking and use of cane and back brace but had been prescribed neither and used neither at hearing).

Further, the ALJ found that Plaintiff had few "subjective complaints" on record regarding his hip and back. (AR 26.) At his hearing, when Plaintiff was asked why he would be unable to walk consistently throughout an eight-hour day, he did not mention any hip or back pain; instead, he focused on fears that he would have another stroke, stating, "I feel woozy and

17

sometimes if it's hot I'm not going to be out there trying to commit another stroke." (AR 47.) Those statements suggest that any alleged hip or back issues were not as severe or as limiting as Plaintiff claimed.[8] Cf. McCawley v. Astrue, 423 F. App'x 687, 689-90 (9th Cir. 2011) ("The ALJ also discounted [plaintiff]'s excess pain testimony because she failed to complain to her treating physicians of extreme pain.").

Finally, the ALJ properly considered that Plaintiff's claims were undermined by the consulting and reviewing doctors' opinions. See Rounds, 807 F.3d at 1006; Thomas, 278 F.3d at 958-59. As previously noted, Dr. Maze found a much lesser degree of limitation than that claimed by Plaintiff. (See AR 283.) Her assessments, moreover, were corroborated by the state-agency reviewers' similar findings. (See AR 57-68, 70-82, 285-89.) And the ALJ gave each of those uncontradicted opinions "great weight" (AR 26), which Plaintiff hasn't challenged on appeal.

Thus, substantial medical evidence contradicted Plaintiff's subjective symptom statements, and the ALJ appropriately considered that in his credibility assessment.

---

[8] Plaintiff's allegations of stroke-related wooziness, moreover, were unsupported by the record. Although the ALJ noted it (AR 24) and likely "reasonably account[ed]" for it in the RFC as part of Plaintiff's "status post ischemic stroke" (AR 25; see also AR 22 (RFC limiting him to "occasional climbing but never climbing ladders, rope or scaffolds, and frequent balancing")), outside the hearing the only mention of wooziness was when Plaintiff denied it. (AR 299 (Sept. 2013: "[Plaintiff] denies any dizziness"); see also AR 312 (July 2014: negative for dizziness).) And Plaintiff's purported fears of having another stroke, too, were unsupported by the record. Indeed, the ALJ considered his alleged mental impairments and found them nonsevere, a finding he hasn't challenged on appeal.

18

### 2. *Failure to Seek Treatment*

An "unexplained, or inadequately explained, failure to seek treatment" is a clear and convincing reason for discounting the credibility of a claimant's subjective symptom statements. Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) (en banc); accord Molina, 674 F.3d at 1113; Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir. 2008); see also SSR 16-3p, 2016 WL 1119029, at *8 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints . . . we may find the alleged intensity and persistence of an individual's symptoms [to be] inconsistent with the overall evidence of record."). Here, the ALJ properly found that Plaintiff failed to seek treatment for his allegedly disabling impairments. (See, e.g., AR 24 ("[F]ollow-up treatment essentially stopped shortly after February 2014.").)

Indeed, Plaintiff received no follow-up treatment for any alleged hip or back pain after March 2013. (See AR 239 (only hip/back treatment of record).) And he received no follow-up treatment for his right arm or hand after September 12, 2013, despite alleging disability well beyond then. (See AR 267 (last occupational-therapy visit).) Indeed, Plaintiff complained of such issues in his December 2013 function report (AR 181-88) and May 2014 exertion questionnaire (AR 212-14) but apparently declined to seek treatment at the time or during near-contemporaneous hospital visits (see AR 305 (Apr. 2014: emergency-room visit after dog bit his right hand), 319 (July 2014: emergency room and hospital admission from diabetes

complications)); see also Gilder v. Berryhill, 703 F. App'x 597, 598 (9th Cir. 2017) (upholding ALJ's finding that plaintiff's "sporadic treatment history" and failure to seek treatment "despite the availability" of suitable healthcare "undermined his testimony").

Plaintiff had some follow-up treatment for a month following his August 8, 2013 stroke. (AR 267-68, 298.) He was recommended for continued treatment at his occupational- and speech-therapy visits on September 12, 2013, yet he discontinued them after that date. (See AR 267 (occupational-therapy treatment plan set to last six weeks), 269 (speech therapy to continue additional month)); see also Bunnell, 947 F.2d at 346-47. Plaintiff reported that he failed to pursue speech therapy because it was too "far" and he lacked "transportation," but he also testified that he could take a bus on his own if he had to. (AR 46.) Though he "sometimes" didn't have money for it, he nonetheless had the funds and means to attend his initial follow-up visits, see a "foot doctor" for "new shoes," and get "checkups all the time" at a local healthcare center. (AR 44, 46); cf. Bubion v. Barnhart, 224 F. App'x 601, 604 (9th Cir. 2007) ("[Plaintiff] said she lacked transportation to physical therapy . . . [but] her statement was not credible since she drove to other locations."). Further, by the time of his hearing, he testified that he had plans to see an "eye doctor" in addition to his other ongoing treatment. (AR 44.) He did not mention plans to see doctors about his arm, hip, or back despite noting related impairments just moments earlier. (See AR 43-44.)

Thus, Plaintiff's failure to pursue treatment during the

relevant period for his allegedly disabling impairments was properly considered by the ALJ in discounting his subjective symptom testimony.[9]

## VI.  CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[10] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.


DATED: June 27, 2018

_JEAN ROSENBLUTH_
U.S. Magistrate Judge

---

[9] Defendant argues that the ALJ further discounted Plaintiff's testimony based on his "exaggerated statements" regarding his daily activities and on his "spotty and minimal work history." (J. Stip. at 13-14.)  Neither reason was provided by the ALJ as a basis for discounting Plaintiff's statements' credibility, however.  The ALJ's discussion of Plaintiff's daily activities was in his step-two analysis; there, he concluded that Plaintiff had no severe mental impairment in part because he had "no limitation" in his activities of daily living stemming from psychiatric issues.  (AR 21.)  And the ALJ simply noted the sparse nature of Plaintiff's work history without tying it to his credibility.  (See AR 23); Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009) (district court must "review the ALJ's decision based on the reasoning and factual findings offered by the ALJ — not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking").

[10] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."